UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENNIFER L. THOMAS, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:08-cv-42-WTL-TAB |
| ) | |
| BOWMAN HEINTZ BOSCIA & VICIAN, P.C., ) | |
| and Indiana professional corporation, ) | |
| Defendant. ) | |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Jennifer L. Thomas ("Thomas"), filed this suit against the Law Firm of Bowman Heintz Boscia & Vician, P.C. ("the Firm"), alleging that the Firm violated two provisions of the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692c(a)(2) and 1692e. The Firm concedes that its actions violated the two provisions but nonetheless argues that it is entitled to summary judgment because its actions were not intentional and resulted from bona fide error. The Firm also argues in the alternative that it is entitled to summary judgment on any claim for actual damages because Thomas has no out-of-pocket expenses and the evidence does not support an award for any claim of emotional distress. In contrast, Thomas argues that she is entitled to judgment in her favor because the evidence demonstrates that the Firm's actions were intentional and that the bona fide error defense is inapplicable. She also contends that she has suffered emotional damages that are recoverable.

The issues have been fully briefed and this matter is now ripe for ruling. For the reasons explained herein, the Firm's motion for summary judgment (Docket No. 39) is **GRANTED in part and DENIED in part**, and Thomas's cross motion for summary judgment (Docket No. 52) is **GRANTED in part and DENIED in part**.

## I. <u>BACKGROUND</u>

Although the parties dispute some circumstances that are minor or tangential, the relevant facts are not disputed. On April 16, 2007, the Firm received a collections file from U.S. Bank on a debt owed by Thomas and her husband. The file indicated that Thomas and her husband were represented by counsel and provided counsel's contact information. The firm filed suit in Howard County, Indiana, against Thomas and her husband on the U.S. Bank debt.

On July 6 ,2007, while the U.S. Bank case was still pending, the Firm received a collection file from HSBC Bank Nevada, N.A. ("HSBC") regarding an unpaid credit card account owned by Thomas. The file indicated that Thomas was represented by an attorney but the name and contact for the attorney were not listed. On July 17, 2007, the Firm performed a bankruptcy search on PACER to see if Thomas had filed a bankruptcy petition. The search revealed that as of that date no bankruptcy had been filed.

Subsequently, on August 14, 2007, Thomas and her husband filed a Chapter 7 bankruptcy petition. Among the debts listed on Schedule F of the petition were the debts Thomas owed to HSBC and U.S. Bank. Because the Firm represented U.S. Bank, it was served notice of the bankruptcy via first-class mail on August 18, 2007, at both its Indianapolis and Merrillville offices. U.S. Bank and HSBC were also served with notices. In addition, a copy of the bankruptcy notice was filed with the Howard County court and the clerk of that court promptly served a copy on the attorney at the Firm who had filed an appearance in the U.S. Bank debt matter. As a result, that attorney filed a motion to dismiss the U.S. Bank lawsuit in Howard County.

On November 1, 2007, the Firm filed a second suit against Thomas in Howard County, this time on the HSBC debt. The suit was filed by the same attorney who had handled the U.S. Bank case. At the time that the attorney filed the suit, she did not perform an additional check of PACER or any other system for information on Thomas and instead relied simply on the file, which had not been updated to

indicate that the bankruptcy petition had been filed. On November 6, 2007, the Firm sent a letter directly to Thomas informing her about the lawsuit to collect the HSBC debt. After receiving the communication from the Firm, Thomas contacted the Firm and within a week the Firm dismissed the HSBC lawsuit.

The Firm contends that it has a system of safeguards in place to avoid violations of the FDCPA. The Firm's safeguards include procedures for prioritizing the mail related to bankruptcy matters for review and inputting into the Firm's computer system, training all employees on FDCPA procedures and collection practices, relying on "normal customary usage" in the industry whereby clients will promptly forward bankruptcy information to the Firm, and a computer system designed to flag cases where a debtor has filed for bankruptcy and to populate this information from one file to all files for that particular debtor. Notwithstanding these safeguards, it is clear that the bankruptcy information for the U.S. Bank file did not get transferred to the HSBC file even though Thomas had the same unique debtor ID number for both files in the Firm's system. No one from the Firm could explain how the procedures failed to update the Firm's records so that the HSBC case file would be flagged as a bankruptcy, and the Firm's managing partner indicated that the case should have been a "no brainer." He also testified that "scrubbing" technology, which the Firm began employing in 2008, would have picked up the information had the Firm been using that technology in 2007. In any event, the Firm reviewed some 3,327 of its cases over a two-year period of time where it had received a bankruptcy notice and Thomas's case is the only instance where the Firm took action on the collection file despite having receive a bankruptcy notice. In other words, the Firm's accuracy rate is better than 99.9%.

Thomas incurred no out-of-pocket expenses from the incident. However, she claims that she suffered emotional distress and is entitled to compensation for those damages. In summary, Thomas indicates that she thought she was "going insane" when the police came to her home to deliver the summons for the HSBC lawsuit and worried that she might have overlooked something. Nonetheless,

3

even though Thomas was upset by the incident, she did not seek any medical advice or consultation, even though she had already seen a therapist about her bankruptcy in general.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure ("Rule 56(c)"), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most

favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

### III.  DISCUSSION

As noted, Thomas claims that the Firm violated §§ 1692c(a)(2) and 1692e of the FDCPA. Section 1692c(a)(2) prohibits a debt collector from communicating with a debtor when the debt collector knows that the debtor is represented by counsel and the debt collector has knowledge or can readily ascertain counsel's name and address. Section 1692e generally prohibits "false, deceptive or misleading" collection activities, including making a "false representation" about "the legal status of any debt." 15 U.S.C. § 1692e(2)(A).  A demand for payment when the debt is subject to a bankruptcy proceeding, as is the case here, is considered "false."  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004). Because it is not disputed that the Firm violated these two provisions, the only issues that remain to be decided in this case are whether the bona fide error defense applies and whether Thomas is entitled to recover actual damages.  The Court addresses each issue in turn.

### A.  Whether the Bona Fide Error Defense Applies

Section 1692k(c) of the FDCPA provides a debt collector with a defense if the debt collector can show by a preponderance of the evidence that the violation was unintentional and "resulted from bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid" the error. 15 U.S.C. § 1692k(c). In order to prevail on this defense, the Firm must show that the violation: (1) was unintentional; (2) resulted from a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid such error. *See Ruth v. Triumph Partnerships*, --- F.3d ---, 2009 WL 2487092, *11 (7th Cir. Aug. 17, 2009).

The inquiry as to whether a given procedure is reasonable is by its nature fact-intensive and, therefore, typically reserved for a jury. *See Narwick v. Wexler*, 901 F. Supp. 1275, 1282 (N.D. Ill. 1995). Thus, prevailing on the defense is often dependent upon explaining the procedures that a debt collector has in place and the manner in which those procedures were adapted to avoid the subject error. *See, e.g.*, *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008) (noting procedures employed by the defendant to avoid the error that occurred).

Here, Thomas argues that the Firm cannot prevail on its defense because it received copies of the bankruptcy notice. She asserts that the notice is sufficient to demonstrate that the Firm had knowledge of the bankruptcy proceeding. She therefore contends that the Firm's actions could not be unintentional if it had knowledge of the bankruptcy. Consequently, she does not believe that the bona fide error defense applies.

The Court first considers this argument and the bona fide error defense with respect to the violation of § 1692e as alleged in Count I of the Complaint. While the Court concurs that the evidence demonstrates that the Firm had knowledge of the bankruptcy based on the notices related to the U.S. Bank debt case and the Firm's subsequent action of dismissing that case, the Court is unwilling to take

the same leap as Thomas and conclude that the Firm intentionally violated the statute via its actions on the HSBC debt case. The evidence reveals that the Firm employed various procedures to avoid errors and promptly dismissed the HSBC lawsuit when Thomas reminded the Firm about the bankruptcy. Further, the attorney who handled the case testified that she was unaware of the bankruptcy and would not have filed the HSBC lawsuit had she known about it. While she admittedly had received notice during the course of her work on the U.S. Bank lawsuit, it is evident from her testimony that she did not recall the case when she began work on the HSBC lawsuit, which is hardly an unrealistic proposition given that as a collections attorney she no doubt handles numerous files at any given time. These circumstances demonstrate to the Court's satisfaction that the Firm's actions were not intentional.

Thus, the remaining question is whether the procedures the Firm employed were reasonably adapted to avoid the errors that occurred. The Court concludes that this is such a case. The Firm employed numerous safeguards to flag cases were there was a bankruptcy so that it would not take any action on them. Its procedures are as extensive as those found reasonable in *Ross v. RJM Acquisitions Funding LLC,* 480 F.3d 493, 498 (7th Cir. 2004). Moreover, even though the Firm is unable to explain the exact cause of the failure of its procedures in this case, the Court does not deem that fatal to the defense. As the widely regarded national poet of Scotland wrote, "The best laid schemes o' mice an' men / Gang aft agley." Robert Burns, *To a Mouse* (1785). As the FDCPA recognizes, mistakes can and do occur, which is what all of the evidence suggests happened here. In fact, even though there is uncertainty as to how the Firm's procedures failed, Thomas's case is the only one out of 3,327 where such an error has been shown to have occurred. As such, the Firm's error rate is extremely low. Indeed, it is nearly as low as that in *Hyman v. Tate*, 362 F.3d 965, 967 (7th Cir. 2004), where the defendant had an error rate of 0.01% and ultimately prevailed on its bona fide error defense after a bench trial.

Of course, there is no question that the Firm could have done more in this case. For instance, had it "scrubbed" its data like it does now, it likely would have discovered the error in this case before the HSBC lawsuit was filed and the letter was sent to Thomas. But as the Seventh Circuit has explained, the procedures need only be reasonable; they do not need to be the most advanced available. *See Ross,* 480 F.3d at 497-98. Based on all of the foregoing, the Court finds that the Firm's procedures pass this requirement and that a reasonable jury could only conclude that procedures were reasonably adapted to avoid the § 1692e error. Accordingly, the Firm is entitled to judgment in its favor on the § 1692e violation.

With respect to the § 1692c violation as alleged in Count II of the Complaint, however, the Court reaches the opposite conclusion. Unlike the pure strict-liability rule of § 1692e, liability under § 1692c turns on actual knowledge. *See Randolph*, 368 F.3d at 729-30. In this case, it is reasonable to infer that the Firm knew that Thomas had an attorney. Indeed, the case file contains such a notation and the managing partner testified to this fact. Nonetheless, the Firm sent communications directly to Thomas without attempting to obtain the contact information for her attorney. The Court believes that it would have been a relatively simple task to ascertain this information. For instance, the Firm could have performed an updated PACER check given that its initial check was three and a half months old, or it could have cross-referenced its own files and seen that the information was contained in the U.S. Bank file. Likewise, notwithstanding the managing partners contention that the effort would have been fruitless, the Firm could have contacted HSBC to inquire about the information, or possibly even asked Thomas herself.

Moreover, there is insufficient evidence to demonstrate that the Firm's procedures were adequate to prevent this particular error. Absent taking additional steps, the only safeguard that the Firm had was to depend on its computer system to populate the information to all files pertaining to Thomas. It is not

8

clear that the system was even designed to do that for these situations when the information regarding attorney information came directly from the client and the Firm did not have to independently enter the information into the system. But even if the system were designed to operate in this manner, there is no other safeguard for obtaining to locate attorney information for cases where the Firm might have only a single file pertaining to a particular debtor. In short, it appears that the Firm has no set procedures to try to ascertain attorney information and simply rely on the client to provide the information other than its reliance on the computer system and its clients to provide the information.

Based on these circumstances, the Court cannot say that § 1692c error was unintentional or that the procedures were adequate when the Firm knew that Thomas was represented by an attorney but made no effort to attempt to ascertain the attorney's contact information, something that would have been relatively easy in this case. Further, the Firm's procedures do not seem to be tailored to even address the specific error in this case. Therefore, the Court concludes that the bona fide error defense fails on the § 1692c violation and that Thomas is entitled to judgment in her favor on this claim.

### B.  Whether Thomas May Recover Actual Damages

The remaining question is whether Thomas may recover actual damages on the § 1692c claim. Because she has incurred no out-of-pocket expenses as a result of the violation, she is only entitled to actual damages if she can demonstrate that she suffered emotional damages.

The Firm contends that the Court must look to state law standards on intentional infliction of emotional distress to resolve this issue. However, the Court is unpersuaded by that argument and agrees with those cases like *Davis v. Creditor Interchange Receivable Management, LLC*, 585 F. Supp. 2d 968 (N.D. Ohio 2008), that have concluded that state tort rules on intentional infliction of emotional distress do not apply to a claim for emotional damages under the FDCPA. Moreover, the Court notes that other

courts in this circuit, while not directly addressing the issue raised by the Firm, have not imposed the state law requirements onto the FDCPA when discussing emotional damages. *See, e.g.*, *Suszka v. Capital Collections, LLC*, No. 08-CV-929, 2009 WL 959798 (E.D. Wis. Apr. 8, 2009), and *Clodfelter v. United Processing, Inc.*, No. 08-CV-2131, 2008 WL 4225557 (C.D. Ill. Sept. 12, 2008). Like those courts, this Court declines to read the state tort requirements into the FDCPA.

That said, this small victory does not win the day for Thomas on this issue. The Seventh Circuit has provided that conclusory statements of emotional distress, without more, are generally insufficient to make out claim for emotional damages unless the facts underlying the case are so inherently degrading that it would be reasonable to infer the person suffered emotional distress. *See Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007); *Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000). This case is the paradigm of those circumstances. The only evidence of emotional damages is Thomas's testimony that she was upset and distressed when the police delivered the summons at her home. There is no evidence indicating that mental health treatment was required or even testimony from her or some other individual close to her describing the impact of this event on her daily life. Further, while bankruptcy proceedings are undoubtedly stressful and the events of this case would probably cause some concern to any reasonable debtor, the circumstances of this case are fairly tame when compared to other cases. In fact, there is nothing to suggest that the actions taken in this case were unusual, nor is there anything to indicate that they were inherently degrading from which emotional damages might be inferred. *See, e.g.*, *Clodfelter*, 2008 WL 4225557 at *5 (permitting emotional damages where debt collector contacted debtor's family members and employer and threatened criminal prosecution for failing to pay debt and emotional distress was corroborated by debtor's mother). Consequently, the Court finds that Thomas

is not entitled to emotional damages in this case and is limited to statutory damages, costs, and attorney's fees.

## IV.  CONCLUSION

For the foregoing reasons, the Firm's motion for summary judgment (Docket No. 39) is **GRANTED in part and DENIED in part**, and Thomas's cross motion for summary judgment (Docket No. 52) is **GRANTED in part and DENIED in part**.  As a result, the claim in Count I of the Complaint is **DISMISSED with prejudice**, and Thomas is limited to statutory damages, costs, and attorney's fees on the claim in Count II of the Complaint.

IT IS SO ORDERED: 08/28/2009

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Electronically distributed to:**

Bonnie Christine Dragotto
PHILIPPS & PHILIPPS, LTD
bdragotto@aol.com

Steven James Halbert
shalbertlaw@aol.com

David J. Philipps
PHILIPPS & PHILIPPS, LTD
davephilipps@aol.com

Mary E. Philipps
PHILIPPS & PHILIPPS, LTD
mephilipps@aol.com

Robert E. Stochel
HOFFMAN & STOCHEL
res@reslaw.org

Glenn S. Vician
BOWMAN HEINTZ BOSCIA & VICIAN, P.C.
glennsvician2@bhbvonline.com